UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Kerving's Guillaume,<br>    Petitioner<br>v.<br>John Ashcroft, Attorney General, el al,<br>    Respondents | No. 3:02CV1276 (RNC)<br><br>March 9, 2005 |

**PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

    Petitioner Kerving's Guillaume moves the Court for summary judgment; there are no material facts in dispute and the petitioner is entitled to a judgment in his favor as a matter of law. The petitioner is entitled to a writ of habeas corpus because he will be immediately detained by the Haitian authorities upon his return under their program of preventative detention of criminal deportees. The conditions in Haitian jails are subhumann, including inadequate space for detainees, inadequate food, water and medicine, and the spread of communicable diseases. Several detainees die every year in Haiti due to the grossly substandard conditions. The government of Haiti intentionally uses detention of criminal deportees under life threatening conditions as a deterrent to crime. The Haitian government's placement of criminal deportees in these prison conditions amounts to torture under the Convention Against Torture ("CAT"). Because the petitioner will be subjected to torture upon his return to Haiti, he is entitled to relief from removal under the CAT.

    The government does not dispute the factual assertions made by the petitioner –!that criminal deportees are immediately detained upon their return by the Haitian government in life threatening prison conditions –!it merely argues that the facts asserted by the

1

petitioner do not meet the legal definition of torture, thus he is not entitled to protection under the CAT.

**FACTS**

The government has submitted a declaration from John O'Malley, an officer in U.S. Immigration and Customs Enforcement ("ICE"), stating that ICE has resumed deportations to Haiti of non-citizens with criminal convictions that are subject to a final order of removal. Declaration, p.1. Mr. O'Malley's declaration also states that the government of Haiti has indicated to the U.S. government that it will detain criminal deportees for at least a few months upon their return and, "the purpose of the detention is to protect Haitian citizens from potential harm caused by returning criminals pursuant to their rule of preventative detention." Declaration, p. 1. Thus it is clear that the petitioner faces certain detention in life-threatening prison conditions upon his removal to Haiti.

There is no evidence indicating that the well-documented life-threatening prison conditions in Haiti have been ameliorated by the current interim government. In fact, on December 1, 2004, there was a riot at the Central Prison in Port-au-Prince and seven people were killed and sixteen people were injured. *See* Ex. 2 – Deutsche Presse Agentur, *14 Killed in Disturbances in Haiti*, 12/2/04, Ex. 3 – World Food Programme, *WFP Haiti Emergency Situation Report No. 16*, 12/7/04. A recent report issued by the University of Miami School of Law confirms that the prison conditions in Haiti continue to be dismal and life-threatening. See Ex. 1.

There is no dispute as to the facts as the government has conceded that the petitioner will be detained upon his removal to Haiti and that the prison conditions in Haiti are deplorable and life-threatening.

**ARGUMENT**

The petitioner reaffirms his argument that he is entitled to CAT relief and the Board of Immigration Appeals ("BIA") erred in *Matter of J-E-*, 23 I&N Dec. 291 (BIA 2002). The Board erred in finding that the intentional placement of criminal deportees in life-threatening prison conditions by the government of Haiti is a "lawful sanction" because it is indented to protect the population from criminals. The Board fundamentally misapplied the intent requirement included in the CAT regulations to the situation present in the case at bar. The fact that the government of Haiti has an interest in protecting the Haitian public from dangerous criminals does not obviate its duty under the CAT to refrain from torturing criminal deportees as a means to achieve that otherwise legal goal.

The BIA held in *J-E-* that in order for an act to amount to torture under the CAT, it must have been committed for an "illicit purpose." *See J-E-*, 23 I&N Dec. at 298. This holding is inconsistent with the regulations and language of the CAT. Many of the purposes of torture specifically listed in the CAT and its implementing regulations, e.g. extraction of a confession from a criminal suspect, are in fact licit purposes, if pursed through non-torturous means. Therefore, an act does not require an "illicit purpose" in order for it to amount to torture.

The regulations state that torture is an act committed, "for such purposes as," and lists a specific set of "classic" examples of torture. 8 C.F.R. § 208.18(a)(1). A "classic" case of torture is use of extreme physical suffering to extract a confession from a criminal suspect. *See* 8 C.F.R. §!208.18(a)(1); *Khouzam v. Ashcroft*, 361 F.3d 161, 162 (2d Cir. 2004). The Supreme Court has recognized that a government has a legitimate interest in extracting confessions from criminal suspects as part of an overall procedure of criminal

3

justice intended to protect the public from crime. *See e.g. Culombe v. Connecticut*, 367 U.S. 568, 571 (1961). Therefore, it is incorrect to hold that an act committed with the intent to extract a confession from a criminal suspect has an "illicit purpose" – the Supreme Court has recognized that a government has a lawful interest in obtaining confessions from criminal suspects. The purpose of the CAT is not label all attempts to extract confessions from criminal suspects as "illicit" – some attempts to achieve that goal are in fact legal. The purpose of the CAT is outlaw use of torture as a means to achieve that otherwise legal goal. *See Khouzam*, 361 F.3d at 162-163.

In fact, the Second Circuit has held that use of torture as part of a criminal investigation against one who is suspected of murder, even when there is strong evidence to believe that the suspect committed the murder, is a violation of the CAT. *See Khouzam*, 361 F.3d at 168-172. Conceding that a government has a legitimate interest in arresting and prosecuting one who has committed murder, use of torture as a part of a criminal justice system, even in prosecuting murderers, is prohibited by the CAT because under the terms of the CAT, torture cannot be used to achieve *any* purpose. The BIA erred in *J-E-* in holding that in order for an act of torture to fit under the CAT it must be committed for an "illicit purpose." In fact, most of the purposes listed in the regulations, and cited by the BIA, are otherwise legal, if achieved through non-torturous means.

Use of torture as part of a system of preventative detention and deterrence to protect the public from crime is prohibited by the CAT. *See* 8 C.F.R. §!208.18(a)(1); *Khouzam*, 361 F.3d at 162-163. In fact, the regulations specifically state that an act causing severe pain or suffering committed against someone for the purpose of "punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or

4

intimidating or coercing him or her or a third person," amounts to torture under the CAT. 8 C.F.R. §!208.18(a)(1). The government of Haiti has stated that its purpose in detaining criminal deportees in life threatening prison conditions is to protect the Haitian public from criminal activity and deter future crimes. *See* Declaration, p. 1. Thus, the detention in life-threatening prison conditions of criminal deportees perpetrated by the Haitian government is in fact done for a purpose specifically listed in the regulations –!to punish the criminal deportees for their prior crimes committed abroad, and to intimidate and coerce them and others into not committing criminal activity in the future. The BIA clearly erred in finding that, "there is no evidence that Haiti's detention policy is intended to defeat the purpose of the Convention to prohibit torture." *J-E-*, 23 I&N Dec. at 300. Haiti's detention policy is clearly intended to use life-threatening prison conditions – which is torture – as a means to prevent future criminal acts, thus defeating the purpose of the CAT to prohibit the use of torture to punish one for his prior acts and to coerce him or a third person. *See Id*.

  The BIA in *J-E-* also misapplied the CAT regulations requiring that the perpetrator of torture specifically intend to inflict severe pain or suffering. Both the prior statements from the Haitian government, and the current declaration from Mr. O'Malley, make it clear that the specific purpose of Haiti's detention of criminal deportees in life-threatening prison conditions is preventative detention and deterrence of criminal activity. *See J-E-*, 23 I&N Dec. at 300; Declaration, p. 1. The BIA in *J-E-* held that because the life-threatening prison conditions in Haiti were not created for the specific purpose of torturing criminal deportees, because the Haitian authorities have expressed some interest in ameliorating the prison conditions, and because the ultimate end of the Haitian authorities

is not to torture criminal deportees, they do not possess a specific intent to commit acts of persecution. *See Id*.

The fact that the implements of torture –!life-threatening prison conditions –!were not created by the government of Haiti with the specific intent of being used as a means to torture criminal deportees does not eliminate the fact that those tools are being used to commit acts of torture. The Second Circuit has stated that if a government is willfully blind to acts of torture committed by its agents, it is in violation of the CAT. *See Khouzam*, 361 F.3d at 171. A recent opinion from District Court Judge Underhill discusses the willful blindness standard, stating that,

> In *Khouzam*, the Court of Appeals discussed acquiescence in detail and held that the petitioner need only show that government officials "know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it." *Khouzam*, 361 F.3d at 170. There is no additional requirement of official "consent or approval." *Id*.

*Perez v. Loy*, No. 3:01cv1782(SRU), 2005 U.S. Dist. LEXIS 2294, *17 (D. Conn. Feb. 17, 2005). Therefore, the government of Haiti need not have created life-threatening prison conditions with the specific purpose of using those conditions to torture criminal deportees in order to commit a violation of the CAT –!it merely must have knowledge that such prison conditions are being used to torture criminal deportees and breach its duty under the CAT to prevent such acts. *See Id*. The regulations and the language of the CAT do not require that the tools of torture be created with the specific intent of using those tools to commit acts of torture. It would be nonsensical for the BIA to argue that an act of severe pain and suffering committed by a police officer with a knife does not amount to torture simply because the government did not provide the police officer with the knife with the specific intent that it be used to commit an act of torture. If the government

6

specifically orders the police officer to commit an act of torture with a knife, or is willfully blind to an act of torture committed with the knife, then the government has committed a violation of the CAT, no matter what purpose it had in giving the police officer the knife. *See Khouzam*, 361 F.3d at 171.

The fact that the government of Haiti has indicated that it wishes that it could use some alternate means of achieving its goal of preventing and deterring crime and demonstrated at least some intention to ameliorate prison conditions does not eliminate its specific intent to use current life-threatening prison conditions –!which amount to torture –!as a form of preventative detention and a deterrent to crime. Torturers often state that use of torture as a means to achieve their ends are a last resort and they wish that they did not have to use such extreme ends to achieve their goals. *See e.g.* Ex. 4 –!William F. Schulz, *The Torturer's Apprentice*, The Nation, 5/13/02; Ex. 5 –!Eyal Press, *In Torture We Trust?*, The Nation, 3/31/03. Just because a torturer states that he or she wishes that he or she could use a different method to achieve his or her goal does not change the fact that he or she is, at present, intentionally using torture to achieve his or her goal. The Second Circuit in *Khouzam* specifically held that governments have a duty under the CAT to prevent acts of torture by their agents. *See Khouzam*, 361 F.3d at 171.

The fact that the government of Haiti does not have the financial means to improve its prison conditions is not an excuse for its use of the abysmal and life-threatening conditions in its prisons as a means to prevent and deter criminal activity. *See Id.* If a government breaches its duty to prevent acts of torture committed by its agents, it is in violation of the CAT, no matter what view it takes on the propriety of the acts of torture. *See Id.*; *Perez*, 2005 U.S. Dist. LEXIS at *17. The fact that financial constraints make it

difficult for a government to stop an act of torture committed by its agents does not absolve its obligations under the CAT.[1]  The CAT and its implementing regulations do not have a limited resources exception to the use of torture – all acts of torture are prohibited, no matter what financial constraints a government might face.

    In regards to the BIA's assertion that that the policy of the Haitian government does not amount to torture because the ultimate end of its use of life-threatening prison conditions is not to inflict extreme suffering, the petitioner would note that the ultimate purpose behind the use of torture is virtually always something other than mere infliction of extreme physical or mental harm – the CAT and its implementing regulations specifically require that torture be used to achieve some final purpose other than extreme physical or mental suffering. *See* 8 C.F.R. § 208.18(a)(1).  Acts of torture committed simply for the sake of causing harm are acts of masochism that do not fit within the CAT.  In fact, almost every act of official government torture has some seemingly legitimate purpose – protection against terrorism, public security, national security, etc.  The purpose of enacting the CAT was to ensure that torture is not used as means to achieve *any* purpose, no matter how laudable or valuable.  The fact that the ultimate purpose of the life-threatening prison conditions used by the Haitian government is prevention of criminal activity does not change the fact that Haiti intentionally uses life-threatening prison conditions that amount to torture in order to achieve those ends.

---

[1] The petitioner would note that although financial constraints might prevent the government of Haiti from upgrading the conditions of its jails, such constraints do not prevent the government from simply releasing all criminal deportees upon their return to Haiti,

## CONCLUSION

The petitioner is entitled to summary judgment in his favor because there is no dispute between the parties concerning the facts material to the claims being raised and the petitioner is entitled to a judgment in his favor as a matter of law. The government of Haiti's intentional placement of criminal deportees in life-threatening prison conditions amounts to torture, thus the petitioner is entitled to relief from removal under the CAT.

Respectfully submitted for the Petitioner
Kerving's Guillaume by


Justin Conlon
Michael Boyle, his attorneys
federal bar ct26187; juris 421914
Law Offices of Michael Boyle
250 State Street, Unit C2
P.O. Box 335
North Haven, CT 06473-0335
203 239-2299, fax 203 985-8207
jconlon@immigrantcenter.com
mboyle@immigrantcenter.com


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed first class, postage prepaid, on March 9, 2005 to Mary J. Hahn, Yale Law School, Allard K. Lowenstein International Human Rights Clinic, P.O. Box 208215, New Haven, CT 06520-8215 and AUSA Krishna R. Patel, Office of the U.S. Attorney, 915 Lafayette Blvd., Room 309, Bridgeport, CT 06604

Justin Conlon